UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

UNITED STATES OF AMERICA

v.                                    407CR308

DONALD FLOYD BROWN and
CHARON GARRAY FIELDS

## ORDER

## I. INTRODUCTION

Before the Court in this conspiracy, attempted robbery, gun-possession (etc.) case are several *in limine* motions by defendants Donald Floyd Brown and Charon Garray Fields.[1] Doc. ## 69-72. The Government also moves for reciprocal discovery.[2] Doc. # 76.

## II. BACKGROUND

As summarized in a prior Order:

A confidential informant reported to the ...[FBI] that Donald Brown and at least one other person were planning an armed robbery of the Georgia Heritage Federal Credit Union. The FBI and [local police] rapidly developed a plan to respond to the scheme. On [9/26/07], the informant notified the FBI that the robbery was going forward. The informant met with

Brown and Fields at Fields' residence, located at 1216 East 31st Street, Savannah, Georgia.

Apparently due to a last minute change in plans, Brown and Fields rode with the informant to the Memorial Health Credit Union at 1203 East 66th Street in Savannah, rather than to the Georgia Heritage Credit Union, as originally planned. Upon arrival at the credit union, the defendants were arrested.... A search of their vehicle revealed two shotguns and six shotgun shells. Both Brown and Fields carried mesh hunting [balaclavas] in their pockets. Fields also had a loaded .380 caliber pistol in his waistband.

Doc. # 61 at 2. A shotgun shell fell from Fields's waist as he was removed from the van. Doc. # 75 at 2.

The indictment charges the defendants with violating 18 U.S.C. § 371 (Conspiracy); 18 U.S.C. § 2113(a) (Attempted Credit Union Robbery); 18 U.S.C. § 922(g)(1) (Possession of Firearm by Felon); and 26 U.S.C. § 5861(d) (Possession of Unregistered Short-Barreled Shotgun). Doc. # 44.

## III. ANALYSIS

### A. Personal Writings

Fields moves the Court to exclude evidence of certain "gang-related writings" seized from his bedroom at 1216 E. 31st Street, Savannah, Georgia, two days after his arrest on the charges in the Indictment. He contends that such use violates his First Amendment rights and that they are inadmissible under F.R.Ev. 404(b).[3] Doc. # 70 at 1-2. The Government

---

[1] Earlier in this case Fields was known as Eric Thomas Brown, with Charon Garray Fields as his alias (doc. # 2) but by superseding indictment (doc. # 44) the Government indicates that Charon Garray Fields is his real name. *See* doc. # 44 (superseding indictment). Somewhat confusing, however, is that his own attorney referred to him as Eric Brown. *See* doc. # 35. One would think that basic identification would be established early on between attorney and client.

[2] This motion is more or less a formality -- to remind a defendant of his F.R.Cr.P. 16(b) obligation to disclose various items set forth in Rule 16(b)(1). It therefore is granted.

[3] F.R.Ev. 404(b) provides as follows:

Evidence of other crimes, wrongs, or

says that

> [t]hese writings include a handwritten prayer asking for mercy and guidance from the Almighty because of the author's life of gun crime, including a wish to "get away from the mighty gunfire," his mother worrying whether he "would be killed in yet another gunfight," and the author justifying his actions as an attempt to "prove to my hommies 'yea I'm up for it yea I'm hardcore.'"

Doc. # 75 at 1-2 (quoting doc. # 70 exh. F).

Another seized document, according to the Government, contains the following handwritten statement, set forth with the characters and style of the original:

> when I die, $how no pitty bury me deep in gangsta city, pkut a kitch fork$ ac^ro$$ my c^he$t and tell king hoover I tried my be$t. Pkut $hotgun$ in my hand$ and tell king hoover i tried my best.

*Id.* at 2.[4]

The U.S. contends that these writings constitute evidence of Fields's knowing

---

acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

Rule 404(b).

[4] The Government purports to quote exh. B of doc. # 70, but this passage does not show up on that attachment. The Court nevertheless will assume that this passage exists but is not on the docket due to an e-filing error.

possession and use of firearms in connection with the charged criminal activity (*i.e.*, Fields loaded up firearms to use in the robbery, doc. # 44 at 2, Overt Act 5, *see also id.* Overt Act 6, and knowingly possessed a short-barreled shotgun). Hence, they are admissible at trial. *See U.S. v. Bradberry*, 466 F.3d 1249, 1253-54 (11th Cir. 2006) (approving use of evidence of gang affiliation in prosecution for possessing firearm in school zone); *U.S. v. Jernigan*, 341 F.3d 1273, 1284-85 (11th Cir. 2003) (approving use of evidence of gang membership in prosecution for felon in possession of firearm; evidence that defendant's gang often wrapped their weapons in red bandanas was especially probative of issue of which defendant owned gun found, wrapped in red bandana, in car seat between them); *U.S. v. Sills*, 120 F.3d 917, 920 (8th Cir. 1997).

The Court agrees with the Government that, *if* Fields is connected to this evidence (*i.e.*, he generated it), it is relevant given Fields's possession of a firearm at his arrest, plus the discovery of two shotguns concealed in the back of the defendants' vehicle. *See U.S. v. Wilson*, 493 F.Supp.2d 460, 462-64 (E.D.N.Y. 2006) (refusing to preclude introduction at trial of rap lyrics describing activity that resembled criminal charges faced by the defendants). Its introduction does not run afoul of Fed.R.Ev. 404(b) because the Government does not seek its introduction to prove Fields has bad character -- *i.e.*, that because he is a member of a gang, he must have bad character, thus must have committed the crimes alleged. Rather the evidence bespeaks Fields's knowledge, opportunity and lack of mistake in possessing and using firearms in connection with criminal activity. Thus it dials directly into aspects (gun-possessing intent) of the central crime alleged by the Indictment and is admissible under F.R.Ev. 404(b). Furthermore, these writings are *not* so inflammatory so as to

outweigh their probativeness under F.R.Ev. 403. It will be remembered that "inflammatory" is just another way of saying unduly prejudicial (*i.e.*, unacceptably unfair to the person on trial). But if a defendant has chosen a criminal lifestyle (word of which "inflames" jurors against him), creates evidence to corroborate that fact, and that fact is relevant to proving his *mens rea* on a particular crime, then it is as non-sensical to deny the prosecution the use of that evidence as it is to exclude self-made "bragging-rights" videos made by vandals prosecuted for malicious property destruction.

Fields's First Amendment argument is meritless. No doubt he holds a First Amendment right to express criminal thoughts; that right does not, however, shield him from the use of such expressions against him. And *Dawson v. Delaware*, 503 U.S. 159, 160 (1992) ("the First and Fourteenth Amendments prohibit[ed] the introduction in a capital sentencing proceeding of the fact that the defendant was a member of an organization called the Aryan Brotherhood, where the evidence [had] no relevance to the issues being decided"), on which Fields relies, doc. # 70 at 2-3, is easily distinguishable. Sought to be introduced here is not mere evidence of gang membership, but defendant's own written *evidence* of his knowledge and absence of mistake regarding his *intended* use of firearms in connection with the charged criminal activity.

In fact, defendant's writings literally describe involvement in similar gun-related, criminal activity and his neo-religious devotion to being a "gangsta." Such writings thus are relevant and *not* "inflammatory" in the legally prejudicial (*i.e.* within the meaning of Rule

404(b)) sense.[5]

---

[5] Of course, virtually everything the Government adduces at trial will be "prejudicial" to a defendant. F.R.Ev. 401, 403 and 404(b) work together, however, to exclude only *legally* prejudicial evidence, which simply means *unfairly* prejudicial information. It is not "unfair" for a man to willingly engage in, much less memorialize, specifically relevant criminality and then have *that* held against him in front of a jury.

In contrast, it is unfair to engage in guilt by mere association, *Dawson,* 503 U.S. at 160, or inflame juror passions in an effort to convict merely because a defendant is, for example, an Arab Muslim, etc.:

> Evidence can be unfairly prejudicial if it is likely to evoke undue emotion or a strong over-reaction. For example, the prosecution cannot convict on the basis of the defendant's ethnic background or national origin and injecting racial or ethnic references can be unfairly prejudicial. Evidence also can be unfairly prejudicial when it involves improper appeals to sympathy. Evidence that is overly horrific can be so prejudicial that the balance tips decidedly against its admission. Courts sometimes exclude polygraph evidence out of a fear that the jury will give it too much weight.

1 WHARTON'S CRIMINAL EVIDENCE § 4:13 (15th ed. Nov. 2007) (footnotes omitted). This encyclopedist also concluded that "The risk of an improper inference of criminal propensity can also tip the balance against the introduction of otherwise relevant evidence." *Id.* This makes sense because a defendant should not be convicted, for example, for his fifteenth crime merely because he committed fourteen priors (hence, the risk is thought to be high that a jury might improperly convict upon the mere inference of his criminal propensity).

Fields's writings may be said to evince a "criminal propensity," but that fact alone does not justify the conclusion that they should be excluded here. "Because Rule 403 allows the exclusion of otherwise probative evidence, it must only be used sparingly and the district court must strike the balance in favor of admissibility." *U.S. v. Rios,* 264 Fed.Appx. 863, 864 (11th Cir. 2008). Hence, "[i]f the issue of the defendant's knowledge or

Motion # 70 is therefore denied. However, these writings are admissible solely to prove defendant's intent to possess a gun, and not to show mere gang membership (*i.e.*, "associational guilt"). The Government therefore is precluded from referencing Fields's gang membership unless it is necessary to link him to these writings. Furthermore, only those writings specifically probative of his intent to possess a gun shall be admissible (*i.e.*, not all of the writings obtained necessarily are admissible, but phrases like "Pkut $hotgun$ in my hand$" satisfy this standard).

## B. "Shoplifting" Evidence

In a conspiracy prosecution, conduct which occurs during the life of a conspiracy and is a part of the same is direct evidence of the conspiracy; it thus is not extrinsic evidence and, accordingly, is not subject to Rule 404(b), other acts requirements. *U.S. v. Portillo-Quezada*, 469 F.3f 1345, 1353 (10th Cir. 2006).

Put another way, evidence of criminal activity that is "inextricably intertwined" (*i.e.* intrinsic evidence) with the evidence of the charged offense is not extrinsic evidence, so Rule 404(b) does not apply. *U.S. v. Foster*, 889 F.2d 1049, 1054-55 (11th Cir. 1989). Nor does the rule apply where the evidence concerns the context, motive, and set up of the crime and is linked in time and circumstance with the charged crime, or forms an integral and natural part of the account of the crime, or is necessary to complete the story of the crime for the jury. *U.S. v. Chandler*, 996 F.2d 1073, 1101 (11th Cir. 1993).

And, whether the acts of conduct occurred

---

intent is determinative, it is less likely that Rule 404(b) evidence showing knowledge or intent would be needlessly cumulative or prejudicial, under Rule 403." *Id.* Fields's knowledge (that he possessed a short-barreled shotgun, doc. # 44 at 4) is determinative.

before or after the offense charged does not affect the admissibility of evidence as to those matters. *U.S. v. Dickerson*, 248 F.3d 1036, 1046-47 (11th Cir. 2001) (the principles governing what is commonly referred to as other crimes evidence are the same whether the conduct occurs before or after the offense charged, and regardless of whether the activity might give rise to criminal liability); *U.S. v. Zapata*, 139 F.3d 1355, 1357 (11th Cir. 1998).

In motion # 69, Fields lays this factual predicate:

> In the discovery material provided to Defendant, the Confidential Informant (hereinafter "C.I.") stated that as the C.I. was driving with the Defendant and co-Defendant Donald Floyd Brown, they stopped at Advanced Auto Parts and shoplifted and "stole rolls of red reflective tape". (*See* Exhibit A, Attached hereto). Defendant expects the C.I. to repeat this allegation as a trial witness. Defendant notes that he is not objecting to the C.I. testifying that they stopped at Advanced Auto Parts and obtained the tape, only to the allegation that it was obtained by shoplifting.

Doc. # 69 at 1. Fields argues that the evidence that he was a party to a shoplifting crime is irrelevant to the current charges, is unsupported by any corroborating evidence, and may prejudice the jury against him. *Id.* at 2. The Government responds:

> These Defendants stopped at the Advance Auto Parts immediately before traveling to the Memorial Health Credit Union. The reflective tape stolen by Defendants from the Advance Auto Parts was used to repair a broken taillight on the van in which they traveled to the Memorial

Health Credit Union. Evidence of their actions in obtaining that reflective tape, so closely related in time and purpose to the attempted credit union robbery, should be found admissible at trial. That evidence demonstrates the state of mind held by these defendants just prior to the charged attempted bank robbery – specifically, that they were willing to engage in illegal activity.

Doc. # 74 at 2.

The Court disagrees with the Government that "this evidence is part of the *res gestae* of the charged offenses, integral to the story of the crime." *Id.* at 1. Part of what story? How many robbers on their way to a robbery stop and tend to a minor repair that could easily be addressed later? Is the Government contending that somehow stopping and fixing a broken taillight was necessary to carry out the planned robbery? It does not say how. Nor can one equate it to, for example, stopping to buy bullets to load up guns to be used in holding others up. The Government thus has failed to connect the shoplifting crime and the crime of robbery. Motion # 69 therefore is granted; this evidence shall not be presented at trial.

### C. "Cocaine" Evidence

In motion # 71, Fields seeks an Order excluding any evidence, either by testimony or materials, related to suspected cocaine found as a result of a search warrant. He contends that it is inadmissible under Rule 404(b). Doc. # 71 at 1. Following his arrest with Brown, agents searched his home and found "six small bags of suspected powder cocaine." *Id.* at 2 (quotes and cite omitted). The Government has announced no intention to introduce this evidence at trial, doc. # 79, so this motion (doc. # 71) is denied as moot.

### D. "Prior Robbery" Evidence

In motion # 72, co-defendant Brown seeks to exclude

> alleged statements made by Defendant to the Government's paid Informant, about a robbery of Memorial Health Credit Union that occurred in August, 2006 (the "2006 Robbery".)

Doc. # 72 at 1-2. Brown argues that the "government should be prevented from making reference to or submitting evidence of the 2006 Robbery because the Government lacks sufficient proof that defendant actually participated in the 2006 Robbery, and the evidence's probative value is substantially outweighed by its prejudicial value." *Id.* at 2.

To that end, he contends, the informant (who related the 2006 robbery details to an FBI agent) was inconsistent in fingering Brown, and Brown does not match the description of the robbers. *Id.* at 2-3. The informant, Brown emphasizes, is very unreliable and will say anything for the money that the FBI's been giving him. *Id.* at 3-4.

The problem for Brown, however, is that not much is required in this context. Under *Huddleston v. U.S.*, 485 U.S. 681 (1988), similar act evidence is relevant under Rule 404(b) where a jury, by a preponderance of the evidence, could reasonably find that the act occurred and that the defendant was the actor. *Id.* at 690. The uncorroborated word of an accomplice thus is sufficient to satisfy the *Huddleston* standard. *U.S. v. Bowe*, 221 F.3d 1183, 1192 (11th Cir. 2000) (other acts that were admitted as relevant to issue of defendant's intent to commit drug conspiracy offense were established by requisite preponderance of evidence, despite claim that

one witness who testified about such acts admitted that she did not actually see some acts she described, where that witness was detailed and specific both on direct and cross-examination and, although admitting to gaps in her knowledge, related incidents she had observed and conversations she had with defendant).

The Government insists that Brown's "potential involvement in another robbery of the same credit union as in the instant case, within the past several years, bears factual similarities to the instant offense and is not so temporally removed as to lose probative value regarding the defendant's intent and absence of mistake for the crimes charged here." Doc. # 73 at 2. At trial the Court will hold the Government to the "detailed and specific" standard. On that premise, this motion (doc. # 72) is denied.

## III. CONCLUSION

Accordingly, defense motion # 69 is *GRANTED*, as is the Government's motion # 76. *See supra* n.1. Defense motions ## 70, 71 and 72 are *DENIED*. Finally, on a ministerial note, a defense leave-of-absence motion (doc. # 48, filed 2/19/08) is *DENIED* as moot.

This _7_ day of July, 2008.


B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA