# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF GEORGIA

### SAVANNAH DIVISION

DONALD FLOYD BROWN,    )
                                )
      Movant,           )
                                )
v.                       )     Case No. CV411-167
                                )           CR407-308
UNITED STATES         )
                                )
      Respondent.    )

## REPORT AND RECOMMENDATION

Caught while attempting to rob a Savannah, Georgia credit union, Donald Floyd Brown was prosecuted with Charon Garray Fields and convicted of violating 18 U.S.C. § 2113(a) (attempted bank robbery) plus related offenses, then sentenced to 151 months' imprisonment. CR407-308, doc. 125,[1] *aff'd, United States v. Brown*, 374 F. App'x 927 (11th Cir. 2010) (*Brown I*). His new trial motion -- premised on a claimed *Brady* violation -- was denied. Doc. 155, *aff'd, United States v. Brown*, 423 F. App'x 889 (11th Cir. 2011) (*Brown II*). He now moves for 28 U.S.C. § 2255 relief. Doc. 172.

---

[1] The Court is citing only to the criminal docket and using its docketing software's pagination; it may not always line up with each paper-document's printed pagination.

# I. BACKGROUND

Brown and Fields involved themselves with Joseph Morris, who became an FBI confidential informant. Brown approached Morris about robbing drug dealers and a credit union. Morris (a/k/a the FBI's "CI") kept the FBI informed while consorting with the two men, and the FBI armed him with a recording device. *Brown I*, 374 F. App'x at 928-29. One Sunday in September 2007, Morris joined Brown in casing a credit union for Brown, Fields, and Morris to rob the next day. *Id.,* 374 F. App'x at 929. Ultimately the men wound up at the Memorial Health Credit Union, with Morris audio-recording the three men:

> The recording has a lot of inaudible portions to it, but except as noted below the conversation appears to be of a general nature and not about the impending robbery. However, it recorded Brown telling Morris "if it looks good, then it's on" and Fields' statements that they should just go in and come on out, and he intended to rob "the shit" out of that "motherfucker." Morris pulled the van in front of the Memorial Health Credit Union and, leaving the other two in the van, went inside to talk to a teller about his child's account. While Morris was out of the van, law enforcement officers arrested the Defendants. They found matching camouflage ski masks in both Defendants' pockets, and Fields had a pistol and shotgun shells; a shotgun shell also fell out of Fields' lap as he was removed from the van. In the back of the van the agents found two shotguns, one of which had been sawed down. No prints were found on either shotgun.

\* \* \* \*

The Defendants were indicted for conspiracy, attempted bank robbery, and possession of an unregistered short-barreled shotgun. Brown was indicted for being a felon in possession of a firearm. . . . A jury found both Defendants guilty of all the charges against them. . . .

*Brown I*, 374 F. App'x at 929-30 (footnote omitted).

## II. ANALYSIS

### A. Actual Force, Violence or Intimidation

Brown contends that his trial lawyer, Peggy A. Kreinest,[2] provided him with ineffective assistance of counsel (IAC)[3] because she caused his appellate lawyer (Weil) to lose an otherwise valid claim on appeal. Doc. 172 at 4; doc. 176 at 1-3. His claim derives from the first paragraph of 18

---

[2]  She represented him at at trial, doc. 143 at 2; 144 at 2, and was replaced by Amy Levin Weil for his motion for new trial, doc. 152, and appeal.  Doc. 161.

[3]  He thus must satisfy both prongs of the two-part standard in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  He must first show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 687-88. To do so, he "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotations omitted). Counsel, however, has no constitutional duty to raise every non-frivolous issue or argument requested by a criminal defendant. *Jones v. Barnes*, 463 U.S. 745, 754 1983).

Brown also must show that counsel's defective performance resulted in prejudice; that is, he must demonstrate a "reasonable probability" that, but for counsel's unreasonable errors, the outcome would have been different. *Strickland*, 466 U.S. at 694. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Id*. If it is clear Brown has not satisfied one prong of the *Strickland* test, the court need not inquire whether he has satisfied the other. *Id*. at 697; *see also United States v. Crosby*, 2012 WL 899263 at * 3-5 (D. Kan. Mar. 16, 2012) (applying *Strickland* standards to an IAC claim in a § 2113(a) case).

U.S.C. § 2113(a), which requires the prosecution to prove that Brown intended to use actual force and violence or intimidation in his attempt to rob the credit union:

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association; ...

is guilty of the crime of bank robbery. 18 U.S.C. § 2113(a).

Before the Eleventh Circuit "Brown point[ed] to a Fifth Circuit case where, even in the context of an attempt charge, the court held that the government must show that the defendant used actual force and violence or intimidation to convict under that provision. *See United States v. Bellew*, 369 F.3d 450 (5th Cir. 2004). Because the Government here did neither, he argue[d], his conviction is invalid under that provision." *Brown I*, 374 F. App'x. at 930-31.

Brown's appellate argument had some legs. Some courts hold that even for an *attempted* robbery count, defendants like Brown must be shown to have actually acted with force and violence (hence, the FBI here jumped the gun by arresting Brown in the credit union's parking lot). *See, e.g., United States v. Duffey*, 2012 WL 10849 at *7-8 (5th Cir.

4

Jan. 3, 2012) (§ 2113(a) conviction vacated; there was no evidence that defendants acted with force and violence, or intimidation, during incidents at two banks they planned to rob, as required to support their convictions for attempted bank robbery and armed robbery; at one bank the takeover team, armed with guns, drove to the bank and waited in a stolen vehicle for one defendant to initiate the robbery, but he called off the plan at the last minute after a bank patron winked at him, leading him to believe that the patron was aware of the impending robbery, and at a second bank FBI agents observed defendants in two vehicles and arrested them after hearing a defendant say that he was ready to rob the bank).[4]

The Eleventh Circuit noted, however, that: (a) the matter remained undecided in this circuit; (b) the circuits were split on what must be

---

[4] *See also United States v. Smith*, 2009 WL 2835752 at * 9 (E.D. Pa. Aug. 31, 2009) ("This court therefore agrees with the conclusions of the Fifth and Seventh Circuits and finds that a conviction under § 2113(a) for attempted bank robbery requires some evidence that the defendant *actually used* force and violence or intimidation in attempting to commit the robbery.") (emphasis added); *id.* ("No reasonable juror could find that defendant's actions -- sitting in a parked vehicle, outside a bank, with masks and BB guns to be used in robbing it -- constituted force and violence, or intimidation as required by the § 2113(a)."); *United States v. Corbin*, 709 F. Supp. 2d 156, 160 (D.R.I. 2010) (government failed to prove, beyond reasonable doubt, that defendant took substantial steps involving "force and violence" or "intimidation" toward robbing bank, as required to convict defendant of attempted robbery; although officers recovered note in defendant's pocket stating "this is a robbery act very careful no dye bag," note was crumpled up in defendant's pocket and had not been accessed by defendant or shown to anyone).

shown on an attempted robbery count; and (c) Kreinest failed to raise this argument before the district below, so only plain-error review was available. But because the circuits were split, the error was not plain, so this claim was denied. *Brown I*, 374 F. App'x. at 931; *see also United States v. Williams*, 387 F. App'x. 282, 284-86 (3d Cir. 2010) (no plain error review on unpreserved issue that turned on a circuit split over a statutory interpretation).

Proceeding *pro se*, Brown insists he has shown Kreinest's ineffective assistance because Weil had a reasonable shot at undoing his § 2113(a) conviction had Kreinest raised the issue below. Kreinest's omission, he contends, ruined his chance at convincing the Eleventh Circuit to join others circuits in requiring more, factually speaking, than what the prosecution proved on Brown's § 2213(a) count. Doc. 172 at 4; doc. 176 at 1-3. Of course,

> [t]he reasonableness of the counsel's performance must be evaluated at the time of the alleged error. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). "For counsel's [decision] to rise to the level of constitutional ineffectiveness, the decision ... must have been 'completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.'" *Hatch v. State of Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995) (*quoting United States v. Ortiz Oliveras*, 717 F.2d 1, 4 (1st Cir. 1983)), cert. denied, 517 U.S. 1235 (1996). Neither hindsight nor success is the measure of the reasonableness of counsel's challenged conduct.

*Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir.), *cert. denied*, 522 U.S. 844 (1997).

*Crosby*, 2012 WL 899263 at * 3; *see also id.* at * 4-5 (rejecting IAC claim based on counsel's failure to object to § 2213(a) "intimidation element" jury instruction).

No hindsight is being applied here. The case law put Kreinest on notice of the split *before* Brown's trial, and she evidently failed to research and litigate the issue. Doc. 176 at 1-3. But the government correctly points out that the majority of the circuits have ruled against Brown, doc. 175 at 7 (Second, Fourth, Sixth, and Ninth Circuit cases going against him on this issue); *see also United States v. Crosby*, 416 F. App'x 776, 779 n. 4 (10th Cir. 2011) (citing that line of authority in a related context), and apparently only the Fifth and Seventh Circuits have ruled that the prosecution must put up proof of an actual act of force, violence, and intimidation. *See Duffey*, 2012 WL 10849 at *7-8; *United States v. Thornton*, 539 F.3d 741, 748 (7th Cir. 2008). So, the government concludes, no viable IAC can be advanced. Doc. 175 at 8.

However, the Eleventh Circuit has *yet* to rule on this issue, so it cannot be said that *it* is part of any circuit split.[5] And it cannot be denied that, had Brown's appellate panel sided with the "minority view," the result would have altered the outcome of his case. Still, the case law the government also points out, doc. 175 at 8, militates against Brown here. *Garcia v. United States*, 205 F.3d 1340 (Table), 2000 WL 145358 at *2 (6th Cir. 2000) (no IAC based on circuit split where "clear majority position in the circuits courts" was against the petitioner); *United States v. Mellor*, 2010 WL 3585892 at * 9 (W.D. Va. Sept. 9, 2010) (it is not true that the "mere failure to cite favorable but non-binding decisional authority constitutes ineffective assistance of counsel. Indeed, as the Supreme Court has observed, 'the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim.' *Engle v. Isaac*, 456 U.S. 107, 133-34, 102 S. Ct. 1558, 71 L.Ed.2d 783 (1982)."), *aff'd*, 409 F. App'x 705 (4th Cir. 2011);

---

[5] The Eleventh circuit has, as the government points out, doc. 175 at 7 n. 4, upheld "attempt" convictions under § 2113(a), but this precise issue was not raised. *See, e.g.*, *United States v. Perez*, 350 F. App'x. 425, 428 (11th Cir. 2009) ("[i]n order to support a conviction for an attempt to commit a crime, the government must prove that the defendant had the specific intent to commit the crime and 'took actions that constituted a substantial step toward the commission of [the] crime.") (quotes and cites omitted).

*Culver v. United States*, 2010 WL 1629680 at * 2-3 (S.D. Ohio Apr. 21, 2010) (rejecting IAC claim based on counsel "failing to anticipate a development in the law" that later resolved a circuit split).

Therefore, this claim fails. But this is an issue debatable among jurists of reason, so Brown should be granted a Certificate of Appealability (COA) and *in forma pauperis* (IFP) status on appeal.

## B. Jury Instruction Claim

Brown's next IAC claim against Kreinest requires some additional background. Before the Eleventh Circuit, Weil argued that the district court's instructions to the jury amended the indictment, making the crime with which he was charged broader and thus violating his Fifth Amendment rights. *Brown I*, 374 F. App'x at 931. Again, the indictment charged Brown with knowingly and willfully attempting to take the funds of a federally insured bank by force and violence, or intimidation. Weil contended that the jury instructions failed to require the government to prove that he used actual force and violence or intimidation. Instead, the court instructed that Brown could be found guilty if he intended to commit the crime and took steps towards doing it -- without also instructing that the government had to show that he

attempted to take money by force and violence or intimidation.[6] Doc. 144 at 124-25; *supra* n. 6. In a second, related argument Weil complained that the instructions failed to convey the indictment's requirement that the government show that Brown used force, violence, and intimidation. *Brown I*, 374 F. App'x. at 931.

The *Brown I* court rejected both arguments: "Brown's first argument is merely the same as his argument that the statute requires a showing of actual violence or intimidation. Like that argument, [Kreinest failed to ] raise it below. And like that argument, because that is not the law in this circuit, there is no plain error." *Id.* Turning to his second claim, the panel found no error because "'the law is well-established that

---

[6] The trial judge instructed the jury that Brown and Fields could

be found guilty of an attempt to commit credit union robbery only if both of the following facts are proved beyond a reasonable doubt:

First: That the defendants knowingly and willfully intended to commit the offense of credit union robbery as charged; and, Secondly: That is [sic] defendants engage[d] in conduct which constituted a substantial step towards the commission of the crime, and which strongly corroborates the defendants' criminal intent.

A substantial step means some important action leading to the commission of a crime as distinguished from some inconsequential or unimportant act. It must be something beyond mere preparation. It must be an act which, unless frustrated by some condition or event would have resulted, in the ordinary and likely course of things, in the commission of the crime being attempted.

Doc. 144 at 124-25.

where an indictment charges in the conjunctive several means of the violating a statute, a conviction may be obtained on proof of only one of the means, and accordingly the jury instruction may properly be framed in the disjunctive.' *United States v. Simpson*, 228 F.3d 1294 (11th Cir. 2000)." *Brown I*, 374 F. App'x. at 931.

Brown now faults Kreinest for failing to preserve that claim for Weil to litigate on appeal -- that, as the *Brown* panel's ruling shows, she failed to argue the government's need to show actual violence or intimidation, and thus an instruction authorizing a conviction upon the mere showing that he had taken a "substantial step" toward the commission of the crime was defective. Doc. 172 at 4. The resolution of this IAC claim will be controlled by the resolution of his first IAC claim, so this Court reaches the same result: It fails. But by the same token, it supports the same COA/IFP grant.

## C. Shotgun Barrel Length

In addition to the § 2213(a) (attempted robbery) charge, Brown was also indicted for violating 18 U.S.C. § 922(g)(1) ("Possession of Firearm by Felon"), doc. 44 at 3, and "26 U.S.C. § 5861 - Possession of

Unregistered Short - Barreled Shotgun." Doc. 44 at 4.[7] He insists Kreinest was ineffective for failing to argue, at trial, his lack of knowledge about the shotgun's length and thus defeat that (§ 5861(d)) charge.[8] Doc. 172 at 5-6; doc. 176 at 5-6.

Weil argued on appeal that there was insufficient evidence to convict Brown of violating 26 U.S.C. § 5861(d) because there was no evidence that (a) he possessed the shotgun; and (b) knew it had been sawed off. The *Brown I* panel acknowledged that, to show constructive possession (hence, that the defendant had the "intent and power to exercise dominion and control over" the firearm), mere presence near the firearm is not enough. 374 F. App'x. at 933. Instead, the government had to show knowledge of the gun *plus* the power to possess and thus use it. It did: "[H]ere, the gun was in the back of the van and Brown helped put it in there. Therefore, he had the power to possess the gun.

---

[7]  The indictment charged that Brown, in violation of 26 U.S.C. §§ 5861(d) and 5841, "did knowingly possess a firearm, that is, a Winchester, model 140 Ranger, serial number N1044870, with a barrel length shorter than 18 inches, not registered to either of them, or to anyone, in the National Firearms Registration and Transfer Record as required by law." Doc. 44 at 4.

[8] The government's burden in prosecutions for possession of a short-barreled shotgun is to prove that the defendant knew that the weapon had a barrel of less than 18 inches. 26 U.S.C.. § 5861(d). *United States v. Orozco-Martinez*, 440 F. Supp. 2d 915, 917 (E.D. Wis. 2006).

Moreover, the jury in this case could reasonably conclude that Brown was the leader of the venture." *Id.*[9] Finally, the jury could infer that Brown would have seen that the shotgun "was short." *Id.* at 934.

The government cites excerpts from Kreinest's closing-argument showing that she focused on his lack of knowledge and power. Doc. 4 at 11. It would have been fruitless, it argues, for her to argue that he lacked knowledge of the shotgun's length. *Id.* at 11-12. Brown disagrees, contending that she should have argued *both*, because he was charged with violating statutes that turned on *both*, so she at least had a shot at winning an acquittal of the § 5861(d) charge even if she lost on the broader-knowledge based, § 922(g)(1) charge. Doc. 176 at 5-6.

---

[9] The panel further explained:

> Testimony at the trial established that the shotgun was wrapped in a blanket; therefore, it is certainly conceivable that Brown did not know what it looked like. However, the jury could have reasonably believed that because the Defendants retrieved the guns from the house together, and loaded them into the van, Brown had the opportunity to see the shotgun. Although the guns were wrapped when the CI [Morris] saw the two defendants bring the guns out of the house, they may not have been wrapped before bringing them out. There is an even stronger inference that Brown saw the shotgun on the morning of the attempt: when the CI picked up both Defendants, who were in Fields' house together, the CI saw Fields loading one of the guns. A reasonable jury could infer that both guns were loaded that morning, that Brown was present when the guns were loaded, and that Brown would have seen *that the gun was short.*

374 F. App'x. at 934 (emphasis added).

Brown's argument has merit. It would *not* have been inconsistent for Kreinest to argue that (1) the gun was not Brown's (what she argued); *nor* (2) that his knowledge of its length was ever proved beyond a reasonable doubt (what she did not argue). And on point (2) courts are reasonably demanding. *See Staples v. United States*, 511 U.S. 600, 602 (1994) (the government must prove beyond a reasonable doubt that the defendant knew the weapon he possessed had the characteristics that brought it within the statutory prohibition); *United States v. Spinner*, 152 F.3d 950, 957 (D.C. Cir. 1998) (reversing a conviction for possession of a semiautomatic assault weapon for lack of evidence that the rifle had a "pistol grip that protruded conspicuously beneath the action of the weapon," as required by 18 U.S.C.A. § 921(a)(30)(B)(ii)); *see generally* FIREARMS LAW DESKBOOK § 10:7 (Aug. 2011) (collecting cases).

Indeed, because guns are so pervasive and the risk of innocent possession is too high, the prosecution cannot simply argue that the very nature of a weapon covered by § 5861(d) places its possessor on notice of possible government regulation. *Staples*, 511 U.S. at 610. "Thus, to obtain a conviction, the Government [is] required to prove that [a defendant] knew of the features of his [weapon] that brought it within

the scope of the Act." *Id.*[10] That point bears special relevance in this context, because "it is legal to saw off a shotgun, so long as the overall length is not less than 26 inches or the barrel length less than 18 inches. Thus, it is reasonable to require the government to prove *knowledge* of length as well as of modification." *Orozco-Martinez*, 440 F. Supp. 2d at 920 n. 3 (emphasis added); *United States v. Shaw*, 670 F.3d 360, 363 (1st

---

[10] The district judge in the instant case charged the jury as follows:

Regarding Count 4, 26 U.S.C., 5861(d), makes it a federal crime or an offense for anyone to possess certain kinds of firearms which are not registered to him in the National Firearms Registration and Transfer Record. Title 26, of the United States Code, § 5845 defines those certain kinds of firearms to includes a shotgun having a barrel of less than 18 inches in length. The defendants can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt:

First: That the defendant possessed a firearm as defined above.

Secondly: That the firearm was not then registered to the defendant in the National Firearms Registration and Transfer Record.

That the defendant knew of the specific characteristics or features of the firearm that caused [it] to be registerable under the National Firearms Registration and Transfer Record.

You will notice that it is not necessary for the government to prove that the defendants knew that the item described in the indictment was a firearm which the law requires to be registered. It is sufficient if the government has proved beyond a reasonable doubt that the defendants knew or were aware of the specific characteristics or features of the firearms that caused it to be within the scope of the Act; namely, *the short length of the shotgun's barrel*, and that it was not then registered to the defendants in the National Firearms Registration and Transfer Record.

Doc. 144 at 126-27 (emphasis added).

Cir. 2012) (collecting cases, including *United States v. Miller*, 255 F.3d 1282, 1286–87 (11th Cir. 2001) (*Staples* requires proof that a defendant knew that an unregistered sawed-off weapon or its barrel was shorter than the statutorily prescribed length)).

On the other hand, it does not take much in the way of circumstantial evidence for the government to prove "sub-18-inch" knowledge. *See, e.g., United States v. Johnson*, 978 F. Supp. 1305, 1310 (D. Neb. 1997) ("even a cursory examination of the weapon . . . proves that [the defendant] must have known that the barrel was shortened to an illegal length when he carried it into the bank and jammed it into the back of the terrified bank president's neck."), *aff'd*, 146 F.3d 547 (8th Cir. 1998); *see also United States v. Moore*, 97 F.3d 561, 564 (D.C.Cir. 1996) ("[t]he readily apparent barrel length and general appearance" of a sawed-off shotgun will usually be sufficient to establish that the defendant knew that its barrel length rendered the weapon illegal); *United States v. Edwards*, 90 F.3d 199, 205 (7th Cir.1996) (fact that the shotgun's length is "obvious and apparent" can provide "a means of proving knowledge"); *United States v. Jones*, 222 F.3d 349, 353 n. 1 (7th Cir. 2000) (collecting cases).

That, in turn, figures into both the *Strickland* deficient performance and prejudice prongs that Brown must show. Was Kreinest *Strickland*-deficient in failing to illuminate the prosecution's failure to show Brown's shotgun-length knowledge? And would it have altered the trial's outcome if she did? The answer to both questions is no if the physical evidence -- the shotgun's short length itself -- was so patent that a jury would deem it obviously recognizable to the gun's possessor (hence, the worth of any closing argument on that point at best would have been dubious).

But the government cites no evidence showing that it was reasonably apparent to Brown that the shotgun was less than 18 inches. The *Brown I* opinion says this: "A reasonable jury could infer that both guns were loaded that morning, that Brown was present when the guns were loaded, and that Brown would have seen that the gun was *short*." *Brown I*, 374 F. App'x at 934 (emphasis added). That's not very specific. The trial transcript, however, shows that the jury heard from ATF agent Toby Taylor, a firearms expert. Doc. 144 at 48. After showing Taylor the Winchester Model 140, 12 gauge automatic shotgun, *id.* at 50, the prosecutor asked:

Q. Agent Taylor, in looking at that gun, is it obviously short?

A. The overall length appears to be okay, but the barrel from when the action is closed, from the end of the choke to the end of the barrel, is shorter than 18 inches, *just by visual inspection.*

*Id.* at 51-52 (emphasis added).

Another agent testified that the shotgun was "14 inches." Doc. 143 at 111. Is four inches so obvious that it constitutes sufficient circumstantial evidence that "anyone" handling the gun in pretty much any circumstance would "know" that it was "sawed off?" Courts have held that it is.[11] Hence, Kreinest did not fall *that* far below *Strickland's* minimal competency bar (the jury had before it a 14" shotgun and an 18" jury instruction), and Brown cannot show *Strickland* prejudice in any event (i.e., that the trial's outcome likely

---

[11] *See Miller*, 255 F.3d at 1287 ("Although the government offered no direct evidence that Miller knew that the shotgun's barrel was shorter than 18 inches, there was ample circumstantial evidence from which the jury could reasonably infer such knowledge. . . . [a]t trial, [an agent] testified that the shotgun's barrel was fifteen-and-a-half inches long. The shotgun was admitted as evidence and published to the jury. This evidence permitted the jury to infer that Miller knew the barrel's length was under 18 inches."); *United States v. Hutchins*, 292 F. App'x 842, 844 (11th Cir. 2008) ("At trial, Hutchins stipulated that the barrels of the shotguns were less than 18 inches, a fact that would be readily apparent to anyone who saw the guns. So, the jury could infer Hutchins knew the shotguns had characteristics that required them to be registered."); *Moore*, 97 F.3d at 564 (concluding that the jury could have reasonably inferred that the defendant knew the rifle was shorter than 16 inches by observing the 13-1/16 inch weapon).

would have been altered had Kreinest illuminated his lack of knowledge). Hence, this claim also fails.

## D. Ineffective Assistance -- Guilty Plea "Advice" Claim

In Ground Three Brown complains that Kreinest ineffectively advised him about the prosecution's plea offer that he ultimately rejected. [12] While Kreinest told him that he would "face up to 15 years if he was found guilty at trial," she failed to explain that if he pled guilty and faced 60 months he might not serve the entire 60 months because of the availability of the 3-level reduction for acceptance of responsibility. Doc. 173 at 12; *see also* doc. 172 at 7.

There is no dispute that Brown had been offered the chance to plead only to Count One (conspiracy to rob credit unions in violation of 18 U.S.C. § 371), which would have subjected him to 60 months' imprisonment. Doc. 175 at 12; doc. 176 at 6; *see also* doc. 125 (he

---

[12] In *Missouri v. Frye*, ___ U.S. ___, 132 S. Ct. 1399 (2012) and *Lafler v. Cooper*, ___ U.S. ___, 132 S. Ct. 1376, 1385 (2012), the Supreme Court held that the right to effective assistance of counsel extends to the plea bargaining process, including when criminal defendants miss out on or reject plea offers because of bad legal advice. *Lafler*, 132 S. Ct. at 1390-91; *see also United States v. Soto-Lopez*, ___ F.3d ___, 2012 WL 1184336 at * 3 (9th Cir. Apr. 10, 2012) (applying *Lafler* to grant relief on IAC claim where counsel failed to properly advise defendant on "the dramatic differences in potential sentences" that he faced); *United States v. Manzo*, ___ F.3d ___, 2012 WL 1130270 at * 3 (9th Cir. Apr. 5, 2012) (*Strickland* IAC deficiency prong met on erroneous sentencing exposure advice in conjunction with plea offer).

received a 151-month sentence); doc. 145 at 7. The government says no prejudice can be shown, even if what Brown says about Kreinest's advice is true, because he most likely would have wound up serving the full 60 months had he taken the deal. Doc. 175 at 13. It cites the Presentence Investigation Report (PSI) in concluding that his plea acceptance would have fetched him at most a U.S.S.G. Sentencing Guideline total offense level of 26 (92-115 months), instead of the 29 that he received. PSI at 9, 17.

Hence, the government concludes, "it is extraordinarily unlikely that Brown would have received a sentence lower than 60 months from the district court." Doc. 175 at 14. The real benefit to Brown, the government insists, would have been to cap his sentence at the 60-month statutory maximum for a conspiracy (18 U.S.C. § 371) offense, and *not* subject him to a much higher range, which is what he wound up with by going to trial (the 151-month sentence, doc. 125).

Brown disagrees: "The government fails to acknowledge that movant was enhanced 9 levels and that it is *highly unlikely* movant would have received all of these enhancements had he accept[ed] the plea offered by the government. Without the enhancement movant's

offense level would be (20). At this level in a category 4, and a three level reduction in offense level (17)[,] movant would have been in a Guideline Range (37-46) months to serve. [That] is significantly under 5 [years] counsel advised movant would serve. Even with enhancements [Brown] would serve only 45 months in prison." Doc. 176 at 6-7 (emphasis added).

This claim fails outright. It turns on Brown's insistence that "it is highly unlikely movant would have received all of these enhancements had he accept[ed] the plea offered by the government." Of course, that's just wishful thinking. The PSI and the sentencing transcript reveals that (a) since age 17, Brown has amassed a considerable criminal record (PSI at 10-17), of which the sentencing judge took full notice, doc. 145 at 18-19; and (b) the sentencing judge specifically noted his culpability, in that he acted in a leadership capacity in the attempted robbery in question. Doc. 145 at 13-16. The government is correct; even assuming *Strickland* deficiency on Kreinest's plea advice -- and that would be an unwarranted assumption because Brown does not otherwise claim that Kreinest failed to accurately convey the prosecution's plea offer -- Brown can show no prejudice.

### E. *Brady* Claim

As explained in *Brown II*, Brown unsuccessfully moved for a new trial based on newly discovered evidence. "[T]he new evidence came in the form of a letter from the government dated approximately one year after Brown's trial, stating that [Morris,] one of the government's primary witnesses against Brown[,] had been indicted on insurance fraud charges stemming from activities that occurred both before and after the events leading to the case against Brown." 423 F. App'x at 890. The district judge's denial was affirmed on appeal "because the new evidence was cumulative and merely impeaching, and because Brown did not show that the jury would probably have reached a different result. *Id.* at 890-91. Brown also argued, for the first time on appeal, "that due process, as well as the concepts of justice and fair play, entitle him to a new trial." *Id.* at 890. But "in the absence of precedent resolving Brown's due process claim, his argument fail[ed] under plain error review." *Id.* at 891.

Brown renews his due process argument here. Doc. 173 at 13-16; *see also* doc. 172 at 8 (fair trial, due process argument). Yet, "once a matter has been decided adversely to a defendant on direct appeal it

cannot be re-litigated in a collateral attack under section 2255." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (quotes and cite omitted); *cf. White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004) ("Invoking the doctrine of the law of the case, the courts, including our court, forbid a prisoner to relitigate in a collateral proceeding an issue that was decided on his direct appeal.").[13]

The government does not raise the re-litigation defense. Instead, it insists that it should prevail on the merits -- it timely disclosed this *Brady* material, it is at best cumulative, and Brown's contentions at best are conclusory. Doc. 175 at 14-18. Brown has not advanced this claim in conclusory terms, *see* doc. 173 at 13-18, but nevertheless rehashes what he litigated on appeal (hence, it is barred under *Nyhuis*), and in any event does not rebut the government's showing that: (a) it timely

---

[13] The Eleventh Circuit spoke of the "law of the case" in *Thomas v. United States*, 572 F.3d 1300, 1303-05 (11th Cir. 2009). There it cited *White v. Thomas*, 572 F.3d at 1304 n. 4. *White* applied the law of the case doctrine to bar relitigation in a § 2255 proceeding of an issue decided on direct appeal. 371 F.3d at 902 (collecting cases) That is what happened here; Brown raised his *Brady* claim on direct appeal, lost, and is now raising it again. The *Thomas* panel assumed that the law of the case doctrine would apply, but found it did not bar review of a § 2255 claim that defendant had been denied counsel in prior state proceedings, as counsel did not raise the issue in his *Anders* brief, and defendant only vaguely claimed that the convictions were "not countable" in his *pro se* brief on direct appeal. 572 F.3d at 1305. Here, in contrast, Brown directly raised on appeal the claim presented here. For that matter, Brown cannot repackage the same claim: "[a] rejected claim does not merit rehearing on a different, but previously available, legal theory." *Nyhuis*, 211 F.3d at 1343.

disclosed the impeaching information; and (b) it is at best cumulative. Both of these findings were incorporated into the *Brown II* opinion, and this Court is not at liberty to reject them.

## III. CONCLUSION

Accordingly, Brown's § 2255 motion should be **DENIED**. Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009) (unpublished), the Court notes the two COA-worthy issues discussed above, so a COA should issue on them. 28 U.S.C. § 2253(c)(1). And, since there are two non-frivolous issues to be raised on appeal, an appeal would be taken in good faith. Thus, *in forma pauperis* status on appeal should likewise be granted. 28 U.S.C. § 1915(a)(3).

**SO REPORTED AND RECOMMENDED** this 8th day of May, 2012.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA